UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOKSMART GROUP, INC., <br> Plaintiff, <br> v. <br> MICROSOFT CORPORATION, <br> Defendant. | Case No. 17-cv-04709-JST <br><br> **CLAIM CONSTRUCTION ORDER** <br> Re: ECF Nos. 64, 65, 58 |

Before the Court are Plaintiff Looksmart Group, Inc.'s Opening Claim Construction Brief, ECF No. 64, Defendant Microsoft Corp.'s Responsive Claim Construction Brief, ECF No. 65, and Looksmart's Reply Claim Construction Brief, ECF No. 68. The parties propose competing constructions of four terms from Looksmart's patent, U.S. Patent No. 7,356,530 ("the '530 patent"). The Court will construe the terms as set forth below.

## I. BACKGROUND

### A. Procedural History

Looksmart filed its complaint in this action on August 15, 2017, alleging infringement of the '530 patent. ECF No. 1. On June 1, 2018, the parties filed their Joint Claim Construction and Prehearing Statement pursuant to Patent Local Rule 4-3. ECF No. 62. Looksmart filed its Opening Claim Construction Brief on July 2, 2018. ECF No. 64. On July 16, 2018, Microsoft filed its Claim Construction Response Brief. ECF No. 65. Looksmart then filed its Reply Claim Construction Brief on July 23, 2018. ECF No. 68. On August 28, 2018, the Court conducted a *Markman* hearing. ECF Nos. 74, 77.

### B. The '530 Patent

The '530 patent is titled "Systems and Methods of Retrieving Relevant Information." ECF

No. 64-2 ('530 patent) at Cover. The patent issued on April 8, 2008, but claims priority to the filing date of January 10, 2001. *Id.* The patent "relates to systems and methods for retrieving relevant information from a large collection of information such as that on the Internet and in particular the World Wide Web." *Id.* at 1:4-7. Consistent with this purpose, the patent claims a number of "computer-implemented method[s] of ranking the relevancy of pages in a collection of pages including linking hypertext pages," based on analyzing certain characteristics of each page. *Id.* at 13:9-11.[1] The parties dispute the construction of four claim terms related to those characteristics.

## II.  LEGAL STANDARD

The construction of terms found in patent claims is a question of law to be determined by the court. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). "[T]he interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)); *see also MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1256 (Fed. Cir. 2012) (when construing claims, courts must consider "what was invented, and what exactly was claimed"). The "correct construction," therefore, is one that "stays true to the claim language and most naturally aligns with the patent's description of the invention." *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC*, 158 F.3d at 1250). While not every claim term must be construed, "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *see also Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) ("[T]he court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury. In order to fulfill this obligation, the court must see to it that disputes concerning the scope of the patent claims are fully resolved." (citation omitted)).

---

[1] The '530 patent contains four independent claims (claims 1, 6, 10, and 12) and nine dependent claims describing such methods. *See* '530 patent at 13:1-16:27.

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention . . . .' " *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Federal Circuit has held that words of a claim are generally given their "ordinary and customary meaning," which is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. In some cases, the ordinary meaning of claim language is "readily apparent," and "claim construction . . . involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. In other cases, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." *Id.* Claim construction may deviate from the ordinary and customary meaning of a disputed term only if "a patentee sets out a definition and acts as his own lexicographer" or if "the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1580 (Fed. Cir. 1996)).

In claim construction, "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. The "context in which a term is used in the asserted claim," "[o]ther claims of the patent in question, both asserted and unasserted," and "[d]ifferences among claims" are all instructive. *Id.* "The claims, of course, do not stand alone" and instead "must be read in view of the specification," which is "[u]sually . . . dispositive" and "the single best guide to the meaning of a disputed term." *Id.* at 1315 (citation omitted). Courts "normally do not interpret claim terms in a way that excludes disclosed examples in the specification." *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007). Additionally, the Federal Circuit has cautioned that "limitations from the specification are not to be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). Even if a patent describes only a single embodiment, the Federal Circuit has "expressly rejected" the contention that the claims must be construed as being limited to that embodiment. *Phillips*, 415 F.3d at 1323. In addition to consulting the

specification, "the court should also consider the patent's prosecution history." *Markman*, 52 F.3d at 980 (citing *Graham v. John Deere Co.*, 383 U.S. 1, 33 (1966)). However, "because the prosecution history represents an ongoing negotiation between the [Patent and Trademark Office] and the applicant, rather than the final product," that history "often lacks the clarity of the specification" and therefore "is less useful." *Phillips*, 415 F.3d at 1317.

Though intrinsic evidence – the claims, specification, and prosecution history – is more significant and reliable than extrinsic evidence, courts may also consider the extrinsic record in claim construction, including expert and inventor testimony, dictionaries, and learned treatises. *Id.* at 1317-18. Within the class of extrinsic evidence, dictionaries, and especially technical dictionaries, "can assist the court in determining the meaning of particular terminology to those of skill in the art" because they "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Id.* at 1318.

### III.    AGREED CLAIM TERMS

The parties agree on the construction of seven claim terms. ECF No. 64 at 11. The Court accordingly adopts the parties' constructions as follows:

| Term | Agreed Construction |
| --- | --- |
| "a link weight" (claims 11 and 13) | "the probability for a user to choose a particular outbound hyperlink out of all outbound hyperlinks originating from a page" |
| "a page weight" (claims 1, 6, 10, and 12) | "the probability for a user – who travels the Web endlessly in a random but well-defined manner – to visit a page" |
| "remaining pages" (claim 12) | "pages in the collection of pages other than the selected page" |
| "a selected word" (claims 1-2, 5-6, and 8-12) | "a word chosen from a selected page" |
| "a selected page" (claims 1, 6, 10, and 12) | "a page chosen from a collection of pages" |
| "a linking page" (claims 1, 4-7, and 10-11) | "a page in the collection of pages with a hyperlink to the selected page" |

| "a query" (claims 1, 6, and 10) | "a request by a user that specifies a search" |

## IV. DISPUTED CLAIM TERMS

The parties dispute four claim terms. The Court examines each in turn.

### A. "intrinsic ranking factor" (claims 1, 10, and 12)

| Looksmart's Proposed Construction | Microsoft's Proposed Construction |
|---|---|
| No construction necessary, as the claim language itself defines the different steps to determine the intrinsic ranking factor.<br><br>Alternatively: "a measure of the relevancy of a selected page to a selected word as claimed by the author of the selected page" | "a measure of the importance of a selected page to a selected word as claimed by the author of the selected page"[2] |

Looksmart argues that, "[b]ecause the claims explicitly detail the necessary steps to determine an 'intrinsic ranking factor,' there is no need for further construction" of this term. ECF No. 64 at 14. Alternatively, Looksmart proposes a construction of "a measure of the relevancy of a selected page to a selected word as claimed by the author of the selected page." *Id.* Microsoft proposes an almost identical construction, but using "importance" rather than "relevancy": "a measure of the importance of a page to a selected word as claimed by the author of the selected page." ECF No. 65 at 20.

The Court first considers whether the term requires any construction. While Looksmart is correct that the surrounding claim language explains how to *derive* an intrinsic ranking factor, the parties present a "fundamental dispute" as to whether an intrinsic ranking factor *represents* a measure of importance or relevancy. *O2 Micro Int'l Ltd.*, 521 F.3d at 1362. Because failing to resolve this dispute could result in the parties making claim construction arguments to the jury, *id.*, the Court will construe the term.

Looksmart argues that the term should be construed as a measure of relevancy because the

---

[2] The Court uses Microsoft's modified proposed construction as noted in Microsoft's responsive brief.  *See* ECF No. 65 at 20 & n.12.

5

1    claims describe a "method of ranking the relevancy of pages," '530 patent at 13:9-10, 13:65-66,
2    14:51-52, 15:25-26, and intrinsic ranking factor is a component of that rank.  ECF No. 64 at 15.
3    Looksmart further points to the patent's abstract, which states that "[i]ntrinsic rank is the measure
4    of the relevancy of the page to a given keyword as claimed by the author of the page," '530 patent
5    at Cover, and also notes that the patent examiner used the same language from the abstract when
6    describing the patent.  ECF No. 64 at 14-15 (citing ECF No. 64-2 at 26).
7            Microsoft counters that the specification describes intrinsic rank in terms of importance,
8    *see* '530 patent at 6:45-53, and that this description is entitled to more weight than the patent's
9    abstract.  ECF No. 65 at 21-22.  Microsoft contends that the patent uses relevance "to refer to the
10   relevance of search results compared to a user's query, (a plain-English usage of the term
11   'relevance')," but not to "describe intermediate ranking computations (which may be performed
12   without knowledge of the query against which relevance may ultimately be judged)."  *Id.* at 22.
13           The Court declines to adopt Microsoft's construction because "importance" creates
14   unnecessary ambiguity in the disputed term's meaning.  *See Every Penny Counts, Inc.*, 563 F.3d at
15   1383 (explaining that in order "to evaluate [a party's] proposal concerning the scope of its claims,
16   the court first had to understand this proposal" by interpreting phrases within the proposed
17   construction).  Microsoft correctly observes that the specification at times describes intrinsic rank
18   as "the measure of the importance of a page *for a given keyword* as claimed by the author of the
19   page." '530 patent at 6:45-46 (emphasis added).  The specification then elaborates on how to
20   measure the importance of the page for a given keyword.  *Id.* at 6:47-53.  Yet it is not immediately
21   clear how this description of the relationship between a selected page and a selected word would
22   be any different if the patent had substituted the word "relevance."  In other words, the parties
23   have identified no difference between whether a page is "relevant" or "important" to a given
24   keyword.  *Cf. Innova/Pure Water, Inc.*, 381 F.3d at 1120 ("[W]e must conclude that this is simply
25   a case where the patentee used different words to express similar concepts, even though it may be
26   confusing drafting practice.").
27           In other places, however, the patent uses "importance" to describe a value of a selected
28   page that is defined by the selected page's relationship to other pages, but independent of any

United States District Court
Northern District of California

1    consideration of a selected word.  For instance, in instructing how to calculate intrinsic rank, the
2    specification distinguishes between relevance and importance.  It explains that "[t]he author of
3    page a can repeat the keyword K many times to claim page a is *relevant to keyword K*." '530
4    patent at 6:8-10 (emphasis added).  By contrast, the invention guards against this type of
5    manipulation by adjusting for "the *importance* of page a *as indicated by other pages*," i.e., the
6    page weight.  *Id.* at 6:10-12 (emphasis added).  The background section of the patent echoes this
7    framing, distinguishing producing "the most relevant page" from "assess[ing] the importance of
8    the page relative to other pages."  *Id.* at 3:18-20.  This use of importance is different from using
9    importance to describe intrinsic ranking factor, which depends on "examining content related to
10   the selected word on the selected page."  *Id.* at 13:22-23.  Because the specification uses
11   importance to describe "two separate and distinct concepts," the Court will not use it to construe
12   the disputed term.  *Bell Atl. Network Servs., Inc. v. Covad Comm'ns Grp., Inc.*, 262 F.3d 1258,
13   1270 (Fed. Cir. 2001); *cf. id.* at 1271 ("Thus, when a patentee uses a claim term throughout the
14   entire patent specification, in a manner consistent with only a single meaning, he has defined that
15   term 'by implication.'" (citation omitted)).

16        Microsoft's own example illustrates the potential for confusion were the Court to adopt its
17   proposed construction.  *Cf. Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1360 (Fed. Cir. 2008)
18   (explaining that "claims are construed as an aid to the decision-maker" (citing *Multiform*
19   *Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)).  According to Microsoft,
20   "the American Kennel Club's home page (https://www.akc.org/) may be an 'important' page on
21   the Web in terms of number of visits to that page or inbound or outbound hyperlinks." ECF No.
22   65 at 23 n.14.  However, Microsoft explains, that page may have "little or no 'relevance' to a
23   searcher looking for information on cats," *id.*, presumably because the American Kennel Club
24   page contains content related to dogs rather than cats.  Put differently, Microsoft's example
25   suggests that a page may be "important" even if the page contains no content related to a selected
26   word.  Of course, this is internally inconsistent with the rest of Microsoft's proposed construction,
27   "a measure of the importance of a selected page *to a selected word* as claimed by the author of the
28   selected page," *id.* at 20 (emphasis added), under which the American Kennel Club's homepage

7

has little or no "importance" to the selected word "cat." Microsoft's example likewise conflicts with the claim language surrounding the term, *see* '530 patent at 13:20-21 ("determining an intrinsic ranking factor *for use of a selected word* on a selected page" (emphasis added)), and the portion of the specification on which Microsoft relies, *see id.* at 6:45-46.

On the other hand, "relevancy" does not present the same potential for confusion because the patent consistently uses relevance to describe the relationship between a selected page and a selected word. *See, e.g., id.* at Cover, 6:8-9, 14:21-22. Microsoft's critiques of relevancy are unpersuasive. First, Microsoft suggests that relevance refers only to the relationship between search results and a user's query, but not calculations that may be performed prior to knowledge of the query. ECF No. 65 at 22. The patent makes no such distinction. The claims describe a method for "ranking the relevancy of pages," even though the ranking, including the calculation of the intrinsic ranking factor, occurs prior to receiving a query. '530 patent at 13:1-2, 13:20-25, 13:38-47; *see also Symantec Corp. v. Comput. Assocs. Int'l*, 522 F.3d 1279, 1288 (Fed. Cir. 2008) ("[I]n general, the purpose of the claim preamble is to give context for what is being described in the body of the claim . . . ."). Moreover, as Looksmart notes, claim 6 expressly describes a pre-query ranking computation as a measure of relevancy. *See id.* at 14:21. In a similar vein, the specification describes the preferred embodiment's ranking process in terms of relevancy, *see id.* at 5:16, 6:3-5, despite the fact that the embodiment first ranks pages prior to receipt of a search query, *id.* at 5:29-37; *see also id.* at Fig. 1.

Second, Microsoft attempts to discount the abstract's language, but the Federal Circuit has repeatedly stated that "in determining the scope of a claim, the abstract of a patent is a potentially useful source of intrinsic evidence as to the meaning of a disputed claim term." *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 966 n.2 (Fed. Cir. 2000) (citing *Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1341 n. * (Fed.Cir.2000)).

The Court therefore construes the term "intrinsic ranking factor" as "a measure of the relevancy of a selected page to a selected word as claimed by the author of the selected page."

B.      "content score" (claims 1, 6, 10, and 12)

| Looksmart's Proposed Construction | Microsoft's Proposed Construction |
|---|---|
| "a score generated by comparing content on a web page with a selected word that indicates the relevance of the content to the selected word" | "a measure of the importance of a selected word on the selected page" |

To construe the term "content score," Looksmart proposes a construction of "a score generated by comparing content on a web page with a selected word that indicates the relevance of the content to the selected word." ECF No. 64 at 15. Microsoft proposes a construction of "a measure of the importance of a selected word on the selected page." ECF No. 65 at 23. The parties dispute two issues related to the term's construction: (1) whether "content score" should be construed in terms of "relevance" or "importance"; and (2) whether "content score" should be construed to explain "*how* the content score is computed." *Id.* at 23.

### 1.      "importance" or "relevance"

Like "intrinsic ranking factor," "content score" is a metric that requires consideration of the page's relationship to a selected word. *See, e.g.*, '530 patent at 7:1-10, 13:22-24. For the reasons stated above, the Court therefore construes the term using "relevance" rather than "importance."

### 2.      description of how content score is computed

The Court agrees with Microsoft that the claims' surrounding language renders unnecessary the language "generated by comparing content on a web page with a selected word" in Looksmart's proposed construction. ECF No. 65 at 23. For instance, claims 1 and 10 already recite that the content score is determined "by examining content related to the selected word on the selected page." '530 patent at 13:22-23, 14:61-63. Similarly, claims 6 and 12 specify that the content score is determined "for the use of each one of the plurality of selected words on said each page," *id.* at 14:13-14 (claim 6), or "for the use of the selected word on the selected page," *id.* at 16:3-4 (claim 12).

The Court therefore adopts a modified version of Looksmart's proposed construction and construes the term "content score" as "a score that indicates the relevance of the content to the

selected word."

C.  "extrinsic ranking factor" (claims 1, 10, and 12)

| Looksmart's Proposed Construction | Microsoft's Proposed Construction |
|---|---|
| No construction necessary, as the claim language itself defines the different steps to determine the extrinsic ranking factor.<br>Alternatively: "a measure of the relevancy of a selected page to a selected word as indicated by other pages" | "a value computed by multiplying the anchor weight of a hyperlink by the page weight of the linking page and summing each product for all crawled pages" |

As with "intrinsic ranking factor," Looksmart argues that there is no need to construe "extrinsic ranking factor" because the surrounding language of the claims adequately sets forth how this term is derived. ECF No. 64 at 17. Looksmart alternatively proposes a construction of "a measure of the relevancy of a selected page to a selected word as indicated by other pages." *Id.* Microsoft proposes a construction of "a value computed by multiplying the anchor weight of a hyperlink by the page weight of the linking page and summing each product for all crawled pages." ECF No. 65 at 8.

The Court first considers whether the term requires construction. Similar to intrinsic ranking factor, the parties present a "fundamental dispute" as to what an extrinsic ranking factor represents, although the surrounding claim language explains how to derive that factor. *O2 Micro Int'l Ltd.*, 521 F.3d at 1362. The Court will therefore construe the term.

Looksmart contends that, if the term is construed at all, it should be construed as "a measure of the relevancy of a selected page to a selected word as indicated by other pages." ECF No. 64 at 17. The Court notes that this construction closely parallels Looksmart's proposed construction of "intrinsic ranking factor" – which the Court adopted above – with the exception that the page's relevance is "indicated by other pages," *id.*, rather than "claimed by the author of the selected page," *id.* at 12. Unsurprisingly, Looksmart offers similar arguments in support of this construction, based on the surrounding claim language, the specification, and the prosecution history. *Id.* at 19-20. Microsoft critiques this construction as based on "an imprecise, high-level reference to the term" in the abstract, arguing that the abstract and the examiner's use of the same

1    language are entitled to little weight. ECF No. 65 at 13-14.

2        Microsoft takes a fundamentally different approach in its proposed construction, which is
3    cast in terms of how an extrinsic factor is "computed." Microsoft relies on language in the
4    specification to argue that its construction represents the patentee's express definition. *Id.* at 8-9.
5    Looksmart argues that Microsoft's construction describes a method for computing extrinsic
6    ranking factor that is narrower than the description in the claims themselves, and therefore
7    improperly imports limitations from the specification. ECF No. 64 at 20. In particular, Looksmart
8    opposes: (1) the change from "adjusting" to "multiplying"; (2) the change from "combining" and
9    "repeating" to "summing"; and (3) adding "for all crawled pages." *Id.*

10       As an initial matter, the Court observes that both parties agree that intrinsic ranking factor
11   should be construed as "a measure of [either relevancy or importance] of a selected page to a
12   selected word as claimed by the author of the selected page," ECF No. 64 at 12; ECF No. 65 at 20,
13   and that the Court has adopted Looksmart's construction of that term. Where two disputed terms
14   incorporate the same term (here, ranking factor), that term "presumptively should carry the same
15   meaning throughout the patent." *Chamberlain Grp., Inc. v. Lear Corp.*, 516 F.3d 1331, 1337
16   (Fed. Cir. 2008). Therefore, "intrinsic ranking factor" and "extrinsic ranking factor" "should have
17   parallel meanings, differing only insofar as ['intrinsic'] and ['extrinsic'] differ" within the context
18   of the claimed invention. *Id.* Looksmart's proposed construction for extrinsic ranking factor
19   contains a parallel structure to the parties' proposed constructions of intrinsic ranking factor, and it
20   incorporates the material difference between the two terms, which is that extrinsic ranking factor
21   is based on an analysis of pages other than the page being ranked. The Court thus considers
22   whether Microsoft has offered a compelling reason to deviate from this parallel construction.

23       Microsoft relies primarily on the contention that the patentee acted as a lexicographer
24   because the specification states that "[e]xtrinsic rank is defined as follows," and then sets forth a
25   mathematical equation, which the specification summarizes thusly: "[t]he equation multiplies the
26   anchor weight of a link by the weight of the originating page and sums each product for all fetched
27   pages." '530 patent at 8:58-9:3. Microsoft further contends that its construction is consistent with
28   all embodiments of extrinsic rank described in the specification and that "the specification does

1    not teach another way to perform the claimed computation." ECF No. 65 at 12.  Although the

2    disputed term is "extrinsic ranking factor," Microsoft's construction effectively seeks to narrow

3    the surrounding claim language explaining how extrinsic ranking factor is derived.  The claims

4    themselves state that the invention involves "*adjusting* the anchor weight in accordance with the

5    page weight of the linking page," rather than multiplying.  *Id.* at 13:33-34, 15:5-6 (emphasis

6    added).  Similarly, the claims recite "*combining* the adjusted anchor weights," rather than

7    summing.  *Id.* at 13:34-35, 15:6-7 (emphasis added).[3]

8         The specification language that Microsoft cites, read in isolation, could perhaps

9    demonstrate an intent to limit the meaning of adjustment to multiplying and combining to

10   summing.  *See Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co.*, 384 F.3d

11   1333, 1339 (Fed. Cir. 2004) (holding that "the inventors deliberately acted as their own

12   lexicographers" by using "defined below" (emphasis omitted)).  But simply looking at this

13   language in isolation is not enough; the Court must consider the patent as a whole.  *See Phillips*,

14   415 F.3d at 1313.  The "Summary of the Invention" explains that "[o]ne embodiment of the

15   present invention provides a general-purpose search engine a method to rank the pages without

16   limitation to topic according to the quality of individual pages."  '530 patent at 3:64-67.  Within

17   the description of that "one embodiment of a search engine," *id.* at 4:30, the specification provides

18   examples of possible variations for calculating different variables and using them to produce page

19   rankings, *see, e.g.*, *id.* at 6:30-33 ("The overall rank of page a *can* be then calculated by combining

20   the intrinsic rank and the extrinsic rank in the following formula: [equation]." (emphasis added)),

21   6:64-68 ("The content score can be calculated in many ways.  One embodiment is as follows:

22   [equation]."), 10:1-7 ("In one embodiment, the ranker . . . uses the partial extrinsic rank to obtain

---

[3] Microsoft relies on *Indacon, Inc. v. Facebook, Inc.*, to argue that extrinsic ranking factor must be limited to the "specification's scope of disclosure" because the term "has no accepted ordinary meaning in the art." ECF No. 65 at 10 (citing 824 F.3d 1352, 1357 (Fed. Cir. 2016)).  But *Indacon* provides that "absent such an accepting meaning [in the art], we construe a claim term only as broadly as provided for by *the patent itself*." 824 F.3d at 1357 (emphasis added) (alterations in original) (quoting *Irdeto Access, Inc. v. Echostar*, 383 F.3d 1295, 1300 (Fed. Cir. 2004)).  Here, the claims themselves provide a description of the term "extrinsic ranking factor," which Microsoft seeks to supplant with a substantially similar, but more narrow, term construction.  *Indacon* is therefore inapposite.

the extrinsic rank for a multi-keyword in the following manner: [equation]."). It is true that, unlike the foregoing equations, the equation for extrinsic rank is not introduced in a manner that clearly establishes that it represents only one of multiple possibilities for calculating extrinsic rank. But at a minimum, ambiguity exists because the specification's definition of extrinsic rank "can easily be read" to set forth an example of how to calculate extrinsic rank within the context of one of multiple possible embodiments. *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1370 (Fed. Cir. 2005); *see also Phillips*, 415 F.3d at 1323 (observing that the specification may be "setting out specific examples of the invention" in order to "to teach and enable those of skill in the art to make and use the invention," rather than indicating an intent "for the claims and the embodiments in the specification to be strictly coextensive"). Nor does the specification indicate that multiplying anchor weight by page weight – as opposed to some other means of adjusting by page weight – is "a very important feature" of the invention or a means of solving a problem in prior art. *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1355-56 (Fed. Cir. 2006). The same is true for summing the adjusted anchor weights. Therefore, the Court cannot say that the specification meets the "exacting" standard of "clearly express[ing] an intent" to limit the plain language of the claims. *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed Cir. 2014) (citation omitted).

In addition, the patent does not provide any basis for the "for all crawled pages" phrase in Microsoft's proposed construction. ECF No. 65 at 8. The claims recite that extrinsic ranking factor is determined by analyzing "linking pages," '530 patent at 13:35, 15:7, and the parties have agreed that "a linking page" means "a page in the collection of pages *with a hyperlink to the selected page*," ECF No. 64 at 11 (emphasis added). All "crawled" pages, by contrast, appears to refer to all pages processed by the search engine, regardless whether they contain a link to the selected page.

The Court therefore construes the term "extrinsic ranking factor" as "a measure of the relevancy of a selected page to a selected word as indicated by other pages."

D.      **"anchor weight" (claims 1, 6, 10, and 12)**

| Looksmart's Proposed Construction | Microsoft's Proposed Construction |
|---|---|
| "the weight generated by comparing a selected word with one or more of (i) text in an outbound hypertext link of a linking page (i.e., 'the anchor text'), (ii) text nearby the anchor text and (iii) text on the linking page that is related to the same topic as the anchor text" | "the weight given to anchor text found in page b (a linking page) linking to page a (a selected page) for a given keyword K (selected word)" |

Though there is little textual overlap between the parties' proposed constructions, they agree that their dispute over this terms boils down to whether anchor weight must be based, at least in part, on the anchor text itself (i.e., the text of the link). ECF No. 65 at 14; ECF No. 68 at 11.

The language of the claims themselves does not require that the anchor text must be used to calculate anchor weight. The claims recite instead that the anchor weight is determined by "examining text *associated* with the outbound hypertext link on the linking page related to the selected word." '530 patent at 13:29-31 (emphasis added), 15:2-4 (same); *see also id.* at 14:16-17 (text "in association with an outbound link"), 16:8-9 (same). "The patentee is free to choose a broad term," such as associated or association, "and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope." *Thorner*, 669 F.3d at 1362.

Here, the specification likewise does not mandate that the anchor weight must rely in part on the anchor text itself. Rather, the specification explains that "[t]he anchor weight can be set in many different ways," including by consideration of text "which is either nearby the anchor text and/or related to the same topic." *Id.* at 9:3-7. Microsoft contends that because the specification states that one "can *also* consider" these other types of text, anchor text must necessarily be considered as well. ECF No. 65 at 18. But the specification's use of "also" is too slender a reed to show that the patentee "clearly express[ed] an intent to define" anchor weight as requiring consideration of anchor text. *GE Lighting Sols.*, 750 F.3d at 1309 (citation omitted). The use of anchor text in the preferred embodiment, '530 patent at 8:65-67, likewise provides little support

14

for finding a clear intent to require consideration of anchor text. *See Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1359 (Fed. Cir. 2016) ("[W]e have repeatedly held that it is 'not enough that the only embodiments, or all of the embodiments, contain a particular limitation' to limit claims beyond their plain meaning." (quoting *Thorner*, 669 F.3d at 1366)). Rather, the specification indicates that "[t]he anchor text for a given link is useful for setting the anchor weight," – not essential. '530 patent at 9:4-5.

Microsoft also relies on the doctrine of prosecution disavowal, which is only applicable where the patentee has "limited or surrendered claim scope through a clear and unmistakable disavowal." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1322 (Fed. Cir. 2013). Microsoft argues that "throughout the prosecution, the patentee repeatedly narrowed the scope of what must be considered for purposes of anchor weight." ECF No. 65 at 17. This argument fails for at least two reasons. First, the statements that Microsoft cites do not clearly and unmistakably limit the patentee's claims in the manner Microsoft posits. Prior to the patentee's September 2007 amendments, claim 53 (now claim 1) recited that the extrinsic ranking factor for each linking page was determined in part "by a content analysis of each linking page based on the number of uses of the at least one selected word on the linking page." ECF No. 64-3 at 240. In response to the examiner's rejection, the patentee amended claim 53 to replace that language with the language ultimately used in the '530 patent: "examining text associated with the outbound hypertext link on the linking page related to the selected word to determine an anchor weight for the linking page." *Id.* at 145. In other words, the patentee narrowed this claim limitation from considering the use of the selected word *anywhere* on the page to an anchor weight based on a more confined consideration of text *associated* with the outbound hypertext link. There is no clear statement, however, that the patentee intended to further limit the claim to consideration of the link's text itself. Indeed, having explicitly defined the link's text itself as the "anchor text," '530 patent at 4:63-65, the patentee could easily have used that phrase if the patentee intended that more circumscribed meaning.

Second, the premise of Microsoft's prosecution disclaimer argument is flawed because requiring consideration of anchor text would not have overcome the Bharat prior art. As

Looksmart observes, the examiner's August 2006 rejection states that Bharat already taught using anchor text alone. *See* ECF No. 64-3 at 272 ("Bharat teaches determining use of the at least one selected word in the outbound link to the selected page on each linking page."). Moreover, the only patentee arguments that Microsoft cites related to the September 2007 amendment are based on whether the anchor weight analysis "was performed before the query was known." ECF No. 65 at 17. Whether this analysis is performed before or after the query is irrelevant to the scope of what text on the page may be considered in analyzing the anchor weight.

Finally, Microsoft argues that Looksmart's construction is confusing, asserting that it is not meaningfully different from considering all of the text on the page because the word "nearby" could be read to also allow considering all such text. *Id.* at 18-19. The Court rejects Microsoft's suggestion that a lay jury would interpret a common, non-technical word such as "nearby," which ordinarily means "close at hand," Merriam-Webster's Collegiate Dictionary 828 (11th ed. 2003), to refer to all text on the page, no matter how far from the link in question. The Court concludes that further specification of "nearby" is not required. *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007) (explaining that a court need "not specify precisely how 'sharp' is too sharp" because "a sound claim construction need not always purge every shred of ambiguity").[4]

The Court therefore construes the term "anchor weight" as "the weight generated by comparing a selected word with one or more of (i) text in an outbound hypertext link of a linking page (i.e., 'the anchor text'), (ii) text nearby the anchor text and (iii) text on the linking page that is related to the same topic as the anchor text."

## CONCLUSION

The Court construes the parties' disputed claim terms as follows:

---

[4] Microsoft also suggests that using text "that is related to the same topic as the anchor text," as Looksmart proposes, ECF No. 64 at 28, requires consideration of anchor text in order to determine whether the text is "related," ECF No. 65 at 19. This argument is meritless because it conflates referencing the anchor text in order to determine whether other text is related with the question raised by parties' competing constructions, which is whether anchor text must be a component of the anchor weight score.

| Claim Term | Court's Construction |
|---|---|
| "intrinsic ranking factor" (claims 1, 10, and 12) | "a measure of the relevancy of a selected page to a selected word as claimed by the author of the selected page" |
| "content score" (claims 1, 6, 10, and 12) | "a score that indicates the relevance of the content to the selected word" |
| "extrinsic ranking factor" (claims 1, 10, and 12) | "a measure of the relevancy of a selected page to a selected word as indicated by other pages" |
| "anchor weight" (claims 1, 6, 10, and 12) | "the weight generated by comparing a selected word with one or more of (i) text in an outbound hypertext link of a linking page (i.e., 'the anchor text'), (ii) text nearby the anchor text and (iii) text on the linking page that is related to the same topic as the anchor text" |

**IT IS SO ORDERED.**

Dated: November 8, 2018

_____
JON S. TIGAR
United States District Judge

17