SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
DIANE S. RICE (CA Bar No. 118303)
drice@hosielaw.com
BRANDON C. MARTIN (CA Bar No. 269624)
bmartin@hosielaw.com
HOSIE RICE LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111
(415) 247-6000 Tel.
(415) 247-6001 Fax
*Attorneys for Plaintiff Looksmart Group, Inc.*

Additional attorneys listed on signature page.

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| LOOKSMART GROUP, INC.,<br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br>Defendant. | Case No.: 17-cv-04709-JST<br><br>**LOOKSMART'S NOTICE OF MOTION AND MOTION FOR LEAVE TO MODIFY THE SCHEDULING ORDER AND SUPPLEMENT MR. LASINSKI'S EXPERT REPORT**<br><br>Date: September 5, 2019<br>Time: 2:00 pm<br>Place: San Francisco, Courtroom #9, 19th Fl.<br>Judge: Hon. Jon S. Tigar |

[redacted]

[redacted]

## TABLE OF CONTENTS

I. Summary of Argument .......... 1

II. Background: The Scheduling Order and the Order Striking the Original Report .......... 2

III. Relevant Legal Principles Regarding Scheduling Modification .......... 3

IV. Argument .......... 3

A. LookSmart Has Good Cause to Allow Amendment of the Scheduling Order .......... 4

B. The Supplemental Report Complies with the Court's Order .......... 5

C. The Law: How to Allocate Cost Savings Depends on the Facts of the Case .......... 9

D. Microsoft Will Not Be Prejudiced .......... 11

V. Conclusion .......... 12

# TABLE OF AUTHORITIES

**Cases**

*Aqua Shield v. Inter Pool Cover Team*
774 F.3d 766 (Fed. Cir. 2014)........ 10

*Branch Banking and Trust Co. v. D.M.S.I., LLC*
871 F.3d 751 (9th Cir. 2017)........ 3

*Cornell University v. Hewlett-Packard Co.*
609 F. Supp. 2d 279 (N.D.N.Y 2009)........ 5, 12

*Dynetix Design Solutions, Inc. v. Synopsys, Inc.*
2013 WL 4538210 (N.D. Cal. Aug. 22, 2013)........ 4

*Envosys LLC v. AT&T Mobility LLC*
2015 WL 10383057 (C.D. Cal. Aug. 10, 2015)........ 5

*Fujitsu Ltd. v. Belkin Int'l, Inc.*
2012 WL 5835741 (N.D. Cal. Nov. 16, 2012)........ 4, 12

*Golden Bridge Tech. v. Apple Inc.*
2014 WL 2194501 (N.D. Cal. May 18, 2014)........ 4, 12

*GPNE Corp. v. Apple, Inc.*
2014 WL 1494247 (N.D. Cal. Apr. 16, 2014)........ 4

*Green Mountain Glass LLC v. Saint-Gobain Containers, Inc.*
2019 WL 3059961 (Fed. Cir. July 12, 2019)........ 11

*Green Mountain Glass LLC v. Saint-Gobain Containers, Inc.*
300 F. Supp. 3d 610 (D. Del. 2018)........ 11

*Hanson v. Alpine Valley Ski Area, Inc.*
718 F.2d 1075 (Fed. Cir. 1983)........ 10

Johnson v. Mammoth Recreations, Inc.,
975 F.2d 604 (9th Cir. 1992)........ 3, 4

*Mars, Inc. v. Coin Acceptors, Inc.*
527 F.3d 1359 (Fed. Cir. 2008)........................................................................................ 10

*Powell v. Home Depot U.S.A., Inc.*
663 F.3d 1221 (Fed. Cir. 2011)........................................................................................ 10

*Prism Techs. LLC v. Sprint Spectrum L.P.*
849 F.3d 1360 (Fed. Cir. 2017)........................................................................................ 10

*Slimfold Mfg. Co. v. Kinkead Industries, Inc.*
932 F.2d 1453 (Fed. Cir. 1991)........................................................................................ 10

*Sociedad Espanola de Electromeidicina y Calidad, S.A. v. Blue Ridge X-Ray Co, Inc.*
226 F. Supp. 3d 520 (W.D.N.C. 2016) .......................................................................... 11

*Sociedad Espanola de Electromeidicina y Calidad, S.A. v. Blue Ridge X-Ray Co, Inc.*
721 Fed. Appx. 989 (Fed. Cir. 2018) ............................................................................. 11

Statutes

35 U.S.C. § 284 ......................................................................................................................... 9

**NOTICE OF MOTION AND REQUESTED RELIEF**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 2:00 p.m. on September 5, 2019, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Jon S. Tigar, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff LookSmart Group, Inc. ("LookSmart") hereby does move the Court pursuant to Rule 16 of the Federal Rules of Civil Procedure to amend the scheduling order and grant LookSmart leave to supplement the expert report of its damages expert, Mr. Lasinski.

This motion is based on this Notice and Memorandum of Points and Authorities, the accompanying exhibits (including Mr. Lasinski's supplemental report), the Declaration of R. Allan Bullwinkel ("Bullwinkel Decl."), the pleadings on file in this case, matters on which the Court may take judicial notice, and such oral argument as the Court permits.

LookSmart has notified counsel for Microsoft Corporation ("Microsoft") of its intent to file this motion. Microsoft opposes.

**MEMORANDUM OF POINTS AND AUTHORITIES**

On July 12, 2019, this Court excluded the expert report of LookSmart's damages expert ("Original Report" of Mr. Lasinski). *See* Dkt. No. 193. (The parties did not receive a copy of the sealed Order until the following Monday, July 15.) To address the concerns raised in the Order, Mr. Lasinski has prepared a supplemental report ("Supplemental Report"—attached hereto as Exhibit A). As shown below, LookSmart has good cause for its request to modify the schedule and supplement the Original Report.

## I. SUMMARY OF ARGUMENT

Looksmart is promptly and diligently filing this motion two weeks after receiving the Court's exclusionary order striking Mr. Lasinski's Original Report. The in-district cases cited *infra* routinely allow a patent owner in Looksmart's position to supplement its damages report.

The Court's Order excluded the Original Report as "allocat[ing] all of Microsoft's avoided costs to Looksmart." Dkt. No. 193 at 6. Mr. Lasinski has prepared a Supplemental Report to clarify that his opinions allocate a significant portion of the [REDACTED] to

Microsoft and allow Microsoft to retain meaningful benefits, as follows:

(1) After accounting for the parties' negotiating positions on the proper discount rate to apply to the calculated cost savings [REDACTED]

(2) This [REDACTED] to Microsoft does not include additional quantifiable cost savings supported by the evidence. Those additional costs (including increased labor) raise the cost savings [REDACTED];

(3) [REDACTED] with respect to Bing news' user experience. While Mr. Lasinski does not quantify these additional benefits (which directly affect Microsoft's revenues, profits and market share), they are meaningful and they are fully allocated to Microsoft; and

(4) The [REDACTED], as well as Microsoft's emphasis on the significance of the patented features to its Bing business, further support Mr. Lasinski's allocation of cost savings.

All of these data points underlying the cost savings and benefits retained by Microsoft are tied to the specific facts and evidence of this case. Contrary to Microsoft's complaints, there is nothing "arbitrary" about anything in Mr. Lasinski's reports. And these data points inexorably show that Microsoft would be "better off"—in Posner [REDACTED].

Accordingly, Looksmart respectfully requests that the Court extend the earlier deadlines to allow Looksmart to serve its Supplemental Report. The current trial date of December 2nd provides ample time for Microsoft to prepare a responsive report and conduct any additional discovery. This notwithstanding, Looksmart is amenable to any continuances that the Court deems necessary to accommodate Looksmart's request.

## II. BACKGROUND: THE SCHEDULING ORDER AND THE ORDER STRIKING THE ORIGINAL REPORT

The original scheduling order set the dates for initial expert reports, the close of expert discovery, and trial to be 120 days, 165 days, and 270 days, respectively, after the Court's claim construction ruling. *See* Dkt. No. 38 (adopting deadlines in Dkt. No. 36). The claim construction order issued on November 8, 2018. Dkt. No. 88. Accordingly, initial expert reports and the close of expert discovery were originally set for March 8, 2019 and April 22, 2019, respectively, and trial was set for August 5, 2019. *See* Dkt. No. 89 at 1, 9. Due to scheduling conflicts, the trial date was moved to December 2, 2019, providing a four month cushion not contemplated by the original schedule. *See* Dkt. No. 92. The parties later agreed to a one week extension relating to expert discovery, which was granted by the Court. *See* Dkt. Nos. 104 & 105.

On March 15, 2019, LookSmart served Mr. Lasinski's Original Report detailing the basis for LookSmart's patent infringement damages based on the "cost savings" approach. *See* Dkt. No. 137-6 (copy of Original Report). Microsoft moved to strike the Original Report on May 14, 2019. *See* Dkt. No. 118. The Court granted Microsoft's motion on July 12, 2019. *See* Dkt. No. 193. Mr. Lasinski's Supplemental Report is directed to addressing the Court's concerns regarding the allocation of cost savings.

## III. RELEVANT LEGAL PRINCIPLES REGARDING SCHEDULING MODIFICATION

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In *Johnson v. Mammoth Recreations, Inc.*, the Ninth Circuit explained the "good cause" standard:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

975 F.2d 604, 609 (9th Cir. 1992) (internal quotations and citations omitted); *see also Branch Banking and Trust Co. v. D.M.S.I., LLC*, 871 F.3d 751, 764 (9th Cir. 2017) (citing *Johnson*, 975 F.2d at 607-09).

## IV. ARGUMENT

LookSmart's motion should be granted for four reasons. First, LookSmart has been diligent in requesting modification of the scheduling order to permit leave to amend its expert report regarding damages. Second, under any view of the law (next point), Mr. Lasinski's opinions in his Original and Supplemental Reports are reliable because he allocates significant benefits and cost savings to Microsoft, and his analysis is rigorously tied to the facts and evidence of this case and the footprint of the patented invention. Third, although not dispositive here, there is a genuine disagreement regarding the law governing allocation between a patent owner and an alleged infringer in the context of a cost savings damage model. Finally, Microsoft will not be prejudiced by the requested relief because the trial date is over four months away.

**A. LookSmart Has Good Cause to Allow Amendment of the Scheduling Order**

Diligence is the determining factor in assessing whether "good cause" has been shown under Rule 16(b). *See Johnson*, 975 F.2d at 609. LookSmart requests modification of the scheduling order two weeks after receiving the Court's sealed Order excluding the Original Report. Additionally, LookSmart could not have requested this relief prior to the close of expert discovery because the Court's Order post-dates that deadline. Accordingly, LookSmart has been diligent in requesting modification of the scheduling order.

Courts in this district have routinely granted leave for parties to supplement expert reports, including patent damages reports, after striking or excluding portions of the original reports. *See Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. C11-05973, 2013 WL 4538210, at *5 (N.D. Cal. Aug. 22, 2013) ("Because Dynetix would otherwise be left without any real evidence of damages, the court will permit it one more opportunity to offer a new expert report on damages."); *Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10-CV-03972, 2012 WL 5835741, at *10 n.13 (N.D. Cal. Nov. 16, 2012) ("Defendants' motion to exclude Mr. Meyer's opinion regarding an 'alternate' royalty for cards is GRANTED unless Mr. Meyer supplements his report to explain why the royalty rate should be increased by 2% . . . ."); *Golden Bridge Tech. v. Apple Inc.*, No. 5:12-cv-04882, 2014 WL 2194501, at *7 (N.D. Cal. May 18, 2014) ("GBT may tender a new damages expert report in accordance with the guidance in this order no later than May 23, 2014."); *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885, 2014 WL 1494247, at *18 (N.D. Cal. Apr. 16, 2014) ("Apple's Motion to

Exclude Mr. Dansky's Testimony is GRANTED without prejudice to GPNE. Any amended expert report and further expert discovery will proceed according to the schedule set at the April 3, 2014 hearing."); *see also Cornell University v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 284 (N.D.N.Y 2009) (permitting supplementation to expert opinions during trial); *Envosys LLC v. AT&T Mobility LLC*, No. CV 11-5210, 2015 WL 10383057, at *7 (C.D. Cal. Aug. 10, 2015) ("In the event that a damages trial is necessary, the Court will allow Envosys to submit a Second Revised Damages Report and will reopen discovery for the limited purpose of permitting AT&T to conduct discovery on the opinions in the Second Supplemental Damages Report.").

**B. The Supplemental Report Complies with the Court's Order**

Mr. Lasinski's Supplemental Report explains how his reasonable royalty determination allocates to Microsoft significant cost savings and other benefits (*e.g.*, revenues, profits, and competitive advantages) derived from its use of the patented technology. The pertinent portions of the Supplemental Report for purposes of addressing the Court's concerns are as follows:

[REDACTED] Paragraphs 10-16 of the Supplemental Report address the Court's discussion regarding discount rates, including the following statements in the Order: [REDACTED].

Mr. Lasinski's Supplemental Report makes clear that he did not use the present value of the [REDACTED] as the "true avoided costs" or the "starting point" of the hypothetical negotiation. Instead, a sensible, non-arbitrary starting point—and the one Mr. Lasinski uses—is how the parties would have negotiated the present value of the [REDACTED].

In this context, Mr. Lasinski did, in fact, conduct an allocation analysis based on discount rate evidence that is tied specifically to this case, [REDACTED]

[redacted] cost savings to Microsoft based on this evidence and how the parties would have reasonably negotiated, [redacted]:

[redacted]

Ex. A ¶ 12.

[redacted] on to Microsoft that resulted from Mr. Lasinski's analysis can be graphically depicted in the following manner:

[redacted]

Ex. A ¶ 14.

This graphic demonstrates that—after the hypothetical negotiation of the discount rate—

[redacted] Ex. A ¶ 15. Rather than allocating "all" of the cost savings to Looksmart, Mr. Lasinski allocates a [redacted]: Paragraphs 29-34 of the Supplemental Report explain that Mr. Lasinski's [redacted]s does not include additional cost savings that he fully allocated to Microsoft. Mr. Lasinski specifically explains that [redacted]. The inclusion of any such additional costs would have increased my calculation of the cost savings attributable to Microsoft's alleged infringement of the '530 Patent." Ex. A ¶ 30.

For example, Mr. Lasinski calculates additional labor costs that are tied to specific evidence in this case and that he fully allocates to Microsoft, as follows: [redacted]." Ex. A ¶ 31.

Once these additional costs are taken into consideration, rather than allocating "all" of the cost savings to Looksmart, Mr. Lasinski allocates a [redacted]. Ex. A ¶¶ 32-33. Mr. Lasinski notes that [redacted] would be known to the parties at the hypothetical negotiation and supports the reasonableness of my proposed apportionment of Microsoft's cost savings." *Id.* ¶ 34.

***<u>Mr. Lasinski's allocation of the invention's "latency" benefit to Microsoft:</u>*** Paragraphs 23-28 of the Supplemental Report explain that "[redacted] underlying my reasonable royalty conclusion reflects the benefits of the '530 Patented technology with respect to increased capacity efficiency, that cost savings calculation <u>does not</u> fully reflect the

benefits of the ’530 Patented technology with respect to Bing news’ user experience.” Ex. A ¶ 23. While Mr. Lasinski did not quantify these additional benefits, they are meaningful and they are fully allocated to Microsoft.

In particular, Mr. Lasinski relies on Looksmart’s technical expert, Dr. Pazzani, to show that the Bing user experience will be degraded when using the increased server alternative because search results will not be returned as quickly, *i.e.*, the alternative will result in increased “latency.” *Id.* ¶ 25 (“I understand that Dr. Pazzani has concluded that even with the additional servers contemplated under my Cost Approach analysis, ‘latency would suffer.’”); *id.* (“Even with additional servers, latency would suffer, but I ignore the degrading of the user experience in this estimate….”—quoting Dr. Pazzani).

As Mr. Lasinski points out, without the latency benefits of the ’530 invention, this degradation in user experience will have a negative impact on Microsoft’s revenues, profits and market share. *Id.* ¶ 26. Accordingly, “[a]s it relates to the Bing news user experience and the related revenues, profits and market share, Microsoft retains all of the benefits of latency improvements as those are not included in my quantitative analysis.” *Id.* ¶ 28.

[redacted] ***from Microsoft’s use of the ’530 invention supports his allocation of cost savings:*** Paragraphs 18-19 of the Supplemental Report reiterate Mr. Lasinski’s original calculations showing [redacted]:

[redacted]

Ex. A ¶ 18.

As noted by Mr. Lasinski in his Supplemental Report, [REDACTED] *Id.*

***Mr. Lasinski's analysis establishing the importance of the '530 patented features to Microsoft further supports his allocation of cost savings:*** Paragraphs 20-22 of the Supplemental Report reiterate the specific evidence cited in Mr. Lasinski's Original Report that establishes the significance of the '530 patented features to Microsoft's Bing business. For example, Mr. Lasinski notes that "[REDACTED]." *Id.* ¶ 20. In particular, this evidence demonstrates that Microsoft places great importance on the [REDACTED]. *Id.* Accordingly, Mr. Lasinski concludes—based on voluminous evidence specifically tied to this case—that [REDACTED] *Id.* ¶ 22.

In sum, Mr. Lasinski's Original and Supplemental reports rely on specific evidence that is tied directly to this case and the patented invention, and his opinions properly allocate significant cost savings and benefits to Microsoft.

### C. The Law: How to Allocate Cost Savings Depends on the Facts of the Case

A patentee is entitled to damages *no less than* a reasonable royalty. 35 U.S.C. § 284. It is axiomatic that such a reasonable royalty can be based on a cost-savings analysis. *See Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011) ("Reliance upon estimated cost

savings from use of the infringing product is a well settled method of determining a reasonable royalty." (quoting *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1080-81 (Fed. Cir. 1983))); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017) ("A price for a hypothetical license may appropriately be based on consideration of the 'costs and availability of non-infringing alternatives' and the potential infringer's 'cost savings.'" (quoting *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770-71 (Fed. Cir. 2014))). While the ultimate reasonable royalty can be less than the calculated cost savings (as set forth in the Court's Order), the cases cited below further support the proposition that the royalty can be the same as or greater than the calculated cost savings depending on the facts of the case. Although there seems to be disagreement on the latter point, it is not critical to resolve that dispute for this case because, as shown in the previous section, Mr. Lasinski has allocated various cost savings and benefits to Microsoft. In any event, any uncertainty in this area of law militates in favor of granting Looksmart's request for leave to amend.

First, the Federal Circuit has held that a reasonable royalty is not capped by the cost of implementing a non-infringing alternative. *See Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008) ("[A]n infringer may be liable for damages, including reasonable royalty damages, that exceed the amount that the infringer could have paid to avoid infringement."). The Court states in its Order that "[i]t does not necessarily follow [from *Mars*] that a patentee is per se entitled to 100 percent of avoided costs when that is the only damages theory asserted." Order at 8:5-7. For the sake of clarity, Looksmart does not advocate a "per se" rule that the patent owner is entitled to more than the cost savings, only that such a scenario is possible under certain facts.

Second, consistent with *Mars*, the Federal Circuit in the *Slimfold* case affirmed a reasonable royalty that was based on—*and exceeded*—the cost savings for using a patented invention. In that case, the reasonable royalty was the entirety of the cost savings for using the patented invention and a 0.75% share of all sales of the infringing product. *See Slimfold Mfg. Co. v. Kinkead Industries, Inc.*, 932 F.2d 1453, 1458-59 (Fed. Cir. 1991). On appeal, the royalty rate on sales of infringing products was challenged, and the Federal Circuit affirmed the rate as a component of the reasonable royalty, which included all cost savings attributed to the invention. *See id.* ("First we point out that

the 0.75% royalty was not the only damages which the district court awarded; the district court also awarded all profits that Kinkead realized in the form of manufacturing cost savings. . . . In any event, we do not consider the award of damages to constitute an abuse of discretion."). The Federal Circuit would not have approved the 0.75% royalty on top of the entire cost savings if the cost savings were an inappropriate component of the reasonable royalty. The reasonable royalty determined by Mr. Lasinski is even more conservative than that in *Slimfold* because he allocates some of the savings and benefits to Microsoft.

Similarly, the Federal Circuit has recently affirmed two other cases—including one case where Mr. Lasinski served as the patent owner's expert—in which the defendants argued that the plaintiff's damages expert improperly allocated the entirety of cost savings to the patentee. In *Green Mountain* (where Mr. Lasinski was the patentee's expert), the "Defendant argue[d] that Plaintiffs failed to apportion: (1) the cost savings of using cullet to arrive at the incremental value of the patent . . . ." *Green Mountain Glass LLC v. Saint-Gobain Containers, Inc.*, 300 F. Supp. 3d 610, 625-26 (D. Del. 2018). On appeal, defendant maintained these arguments. *See* Ex. B at 51 ("[T]he damages award is impermissible because it fails the basic tests of (1) apportionment between patented and unpatented features and (2) *allocation of cost savings between the parties*." (emphasis added)). The Federal Circuit summarily affirmed. *See Green Mountain Glass LLC v. Saint-Gobain Containers, Inc.*, No. 2018-1725, 2018-1784, 2019 WL 3059961 (Fed. Cir. July 12, 2019).

Likewise, in *Sociedad*, plaintiff presented a damages model based on the "bare bones cost savings" per infringing unit, and the jury awarded damages in excess of that model. *See Sociedad Espanola de Electromeidicina y Calidad, S.A. v. Blue Ridge X-Ray Co, Inc.*, 226 F. Supp. 3d 520, 527-28 (W.D.N.C. 2016). On appeal, the defendant challenged the jury award based on a "$500 starting point based on cost savings . . . ." Ex. C at 73. The Federal Circuit affirmed even though the jury awarded significantly more than the cost-savings ask. *See Sociedad Espanola de Electromeidicina y Calidad, S.A. v. Blue Ridge X-Ray Co, Inc.*, 721 Fed. Appx. 989 (Fed. Cir. 2018).

**D. Microsoft Will Not Be Prejudiced**

Trial is currently set for December 2, 2019—more than four months from now. The original

case schedule allocated 150 days between service of initial expert reports and trial—here, there are approximately 120 days until the current trial setting. Given that Mr. Lasinski's supplement clarifies the allocation concerns raised by the Court (as opposed to proposing a vastly different damages model), there is ample time to allow for a deposition, responsive report, and any motion practice relating to Mr. Lasinski's Supplemental Report. To the extent that Microsoft disagrees, LookSmart is amenable to moving the trial date to accommodate any reasonable continuance.

As explained in Section IV.A, when striking or excluding expert opinions, courts often grant leave to supplement the report. *See* cases cited *supra* Section IV.A. And often the time between supplementation and trial is much shorter than here. In *Fujitsu* and *Golden Bridge*, the court granted leave to amend about one month before trial. *See Fujitsu*, No. 10-CV-03972, 2012 WL 5835741, at *10 n.13 (permitting supplemental expert report); Ex. D (December 13, 2012 jury verdict); *Golden Bridge Tech.*, No. 5:12-cv-04882, 2014 WL 2194501, at *7 (permitting supplemental expert report); Ex. E (June 16, 2014 jury verdict). In *Cornell*, the court allowed supplementation during trial. *See Cornell University v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 284 (N.D.N.Y 2009) (permitting supplementation to expert opinions during trial). Because trial is four months away, Microsoft will not be prejudiced by Mr. Lasinski's supplemental report on damages.

## V. CONCLUSION

For these reasons, LookSmart respectfully asks the Court to grant Looksmart leave to serve Mr. Lasinski's Supplemental Report on damages.

Respectfully Submitted,

Dated: July 29, 2019

By: */s/ R. Allan Bullwinkel*
SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
DIANE S. RICE (CA Bar No. 118303)
drice@hosielaw.com
BRANDON C. MARTIN (CA Bar No. 269624)
bmartin@hosielaw.com
**HOSIE RICE LLP**
600 Montgomery Street, 34th Floor San Francisco, CA 94111
Telephone: (415) 247-6000
Facsimile: (415) 247-6001

Leslie V. Payne
TX State Bar No. 00784736 (*pro hac vice*)
lpayne@hpcllp.com
Eric J. Enger
TX State Bar No. 24045833 (*pro hac vice*)
eenger@hpcllp.com
R. Allan Bullwinkel
TX State Bar No. 24064327 (*pro hac vice*)
abullwinkel@hpcllp.com
**HEIM, PAYNE & CHORUSH, LLP**
1111 Bagby St. Ste. 2100
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

Derek Gilliland
TX State Bar No. 24007239 (*pro hac vice*)
dgilliland@nixlawfirm.com
**NIX PATTERSON & ROACH, L.L.P.**
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-5389

**ATTORNEYS FOR LOOKSMART GROUP, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of July, 2019, a true and correct copy of the foregoing LOOKSMART'S MOTION FOR LEAVEL TO AMEND THE SCHEDULING ORDER and accompanying exhibits and declaration was served on all counsel of record via the Court's ECF System.

/s/ *R. Allan Bullwinkel*____

R. Allan Bullwinkel