UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOKSMART GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Case No. 17-cv-04709-JST<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STRIKE DR. PAZZANI'S EXPERT REPORT**<br><br>Re: ECF No. 143 |

Before the Court is Defendant Microsoft Corporation's ("Microsoft") motion to strike Dr. Michael J. Pazzani's expert report. ECF No. 143. The Court will grant the motion.

## I.  BACKGROUND

### A.  Procedural History

In this patent dispute, Plaintiff LookSmart claims that Microsoft's Bing search technology infringes LookSmart's patent, U.S. Patent Number 7,356,530 (the "'530 patent"). ECF No. 1 ¶ 29. The Court will discuss the factual record in more detail where relevant below.

LookSmart filed this action on August 15, 2017. ECF No. 1. On February 14, 2018, LookSmart served its infringement contentions on Microsoft pursuant to this district's local rules. ECF No. 48. The cover pleading to these contentions identifies "Microsoft Bing" as the "accused instrumentality," "including specifically the versions and/or components of Bing referred to as Blue Whale, IndexGenV2, Kirin, IndexGen, or Live Search." ECF No. 159-89 at 4. On May 17, 2018, the Court granted the parties' stipulation giving LookSmart leave to amend these contentions. ECF No. 57. The first page of the amended contentions' claim chart identifies "Bing, including the versions of Bing referred to as Blue Whale, IndexGen, and IndexGenV2 or

Kirin." ECF No. 155-6 at 2.[1] Other portions of the chart will be discussed where relevant below.

On March 15, 2019, LookSmart submitted its expert infringement report, authored by Dr. Michael J. Pazzani. ECF Nos. 122-1, 121-9. The report alleges that the Bing News search engine infringes the '530 patent; it does not allege infringement by other Bing verticals. For example, in the section titled "Overview of the Accused Service," Dr. Pazzani focuses on "the caches from which news results are stored and returned in response to a query through the web and news verticals," or what he refers to as "Bing News." ECF No. 121-9 at 34. In the section titled "Overview of Infringement," Dr. Pazzani asserts that "Microsoft infringes the method claims of the '530 Patent when its Bing News search engine creates a cache database for providing relevant web pages to users in response to a search query." *Id.* at 52.

On May 14, 2019, Microsoft filed a motion for summary judgment of noninfringement, arguing that LookSmart has not met its burden to show that Bing News infringes the '530 patent. ECF No. 121-3. On June 4, 2019, LookSmart filed a motion for sanctions striking two of Microsoft's noninfringement defenses, arguing that Microsoft failed to disclose certain details about Bing News in response to discovery requests. ECF No. 132-1. On June 6, 2019, Microsoft filed the instant motion to strike Dr. Pazzani's infringement report, arguing that it was not on notice of LookSmart's infringement theory for Bing News because that theory was not disclosed by LookSmart's contentions. ECF No. 143. LookSmart opposed the motion and Microsoft filed a reply. ECF Nos. 154-4, 181-4.

Because the outcome of Microsoft's motion to strike will have a significant impact on Microsoft's motion for summary judgment and LookSmart's motion for sanctions, the Court chose to address the motion to strike first. It held a hearing on the motion on October 2, 2019.

**B.    The '530 Patent**

The '530 patent is titled "Systems and Methods of Retrieving Relevant Information." ECF No. 64-2 ('530 patent) at Cover. The patent issued on April 8, 2008, but claims priority to the filing date of January 10, 2001. *Id.* The patent "relates to systems and methods for retrieving

---

[1] From this point, all references to the contentions refer to the amended contentions. *See* ECF 155-6.

relevant information from a large collection of information such as that on the Internet and in particular the World Wide Web." *Id.* at 1:4-7. Consistent with this purpose, the patent claims a number of "computer-implemented method[s] of ranking the relevancy of pages in a collection of pages including linking hypertext pages," based on analyzing certain characteristics of each page. *Id.* at 13:9-11. This Court issued a claim construction order on November 8, 2018. ECF No. 88.

## II.   JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq.*

## III.   LEGAL STANDARD

This district's Patent Local Rules require a party asserting infringement to disclose in its infringement contentions:

> (a) Separately for each asserted claim, *each accused apparatus*, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. *This identification shall be as specific as possible.* Each product, device, and apparatus shall be identified *by name* or model number, if known. Each method or process shall be identified *by name*, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;
>
> (b) *A chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality*, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

*See* Patent L.R. 3-1(b), (c) (emphasis added).

The purpose of these disclosures, along with the parallel requirements for invalidity contentions, is "to further the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their cases." *Genentech, Inc. v. Trustees of Univ. of Pennsylvania*, No. C 10-2037 LHK (PSG), 2012 WL 424985, at *2 (N.D. Cal. Feb. 9, 2012) (citation and internal quotation marks omitted). Once served, the infringement contentions constitute the universe of infringement theories. The contentions may be amended only by order of the court and upon a showing of good cause. Patent L.R. 3-6.

While an expert report may rely on an "evidentiary example or complementary proof" to

3

support an infringement theory advanced in a party's infringement contentions, an expert report may not advance "a new or alternate" theory of infringement. *See Genentech.*, 2012 WL 424985, at *2. In the context of patent infringement cases involving software, an expert cannot theorize that certain functions satisfy a claim limitation unless those functions were previously identified in the party's infringement contentions. *See Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 4802535, at *2 (N.D. Cal. Oct. 11, 2011).

A district court has wide discretion in enforcing the Patent Local Rules. *See SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) ("The district court's application of the local rules are within its sound discretion[.]"); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366-67 (Fed. Cir. 2006) ("Decisions enforcing local rules in patent cases will be affirmed unless clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence.").

When a party seeks to strike an expert report disclosing new theories in a patent case, at least one court in this district has required a showing of prejudice. *See, e.g.*, *Genentech*, 2012 WL 424985, at *3. However, in its decision in *Adobe Systems Inc. v. Wowza Media Systems*, this Court declined to do so "because prejudice is inherent in the assertion of a new theory after discovery has closed, and because to impose such a burden would create an incentive for late disclosure." No. 11-cv-02243-JST, 2014 WL 709865, at * 15 n.7 (N.D. Cal. Feb. 23, 2014). At least four other courts in this district also use this approach. *See MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 WL 1865921, at *2 (N.D. Cal. Apr. 25, 2019); *KlausTech, Inc. v. Google LLC*, No. 10-cv-05899-JSW (DMR), 2018 WL 5109383, at *8 (N.D. Cal. Sept. 14, 2018); *Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HSG (JSC), 2018 WL 620169, at *2 (N.D. Cal. Jan. 30, 2018); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2015 WL 3640694, at *2 (N.D. Cal. June 11, 2015).

**IV.     DISCUSSION**

**A.     Factual and Procedural Background**

Bing is a search engine. When a user types a query into its search box, Bing "crawls" the

web looking for relevant content.[2] ECF No. 121-3 at 11; ECF No. 131-4 at 8. It then indexes that content into different "tiers" based upon the properties of the content. ECF No. 121-3 at 11; ECF No. 154-4 at 5. Three tiers are relevant here: Precision, Comprehensive, and Fresh/Superfresh. The Precision and Comprehensive tiers are subsets of the "mainline web tier," which stores most of Bing's indexed documents. ECF No. 121-3 at 11. These tiers are updated ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓. *Id.*; ECF No. 154-4 at 6. The Fresh tier (also known as Superfresh) stores documents that are more "time sensitive" and "require a special, faster crawling and indexing process." ECF No. 121-3 at 11. These documents are thus updated ▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.*; ECF No. 154-4 at 6. Because of their timeliness, "documents that pertain to news are stored in a special sub-index within the Fresh tier called the News index." ECF No. 121-3 at 11; *see also* ECF No. 154-4 at 11 (referencing "the Superfresh tier that includes News").

Also relevant here is an index generation tool called "Blue Whale." ECF No. 181-4 at 7. The parties disagree about the role Blue Whale plays in the Bing ecosystem. LookSmart alleges that Blue Whale is a "code name[]" for the "Superfresh tier for news." ECF No. 154-4 at 5-6 (making the same allegation for an index technology called "Taza"). Microsoft alleges that, while Blue Whale does serve the Fresh tier, it is not limited to the News index but relates as well to "aspects of Web search, Image/Video search, Social search, etc." ECF No. 181-4 at 7.

LookSmart argues that that its contentions disclosed a single theory that applied to all three tiers of Bing. ECF No. 154-4 at 6. It describes this theory as follows:

> First, Bing crawls the web to capture web pages. Bing then extracts various information from each captured page – such as the words on each page and the content of hyperlinks – ▓▓▓▓▓▓▓▓▓▓ which are stored in the index. Next, Bing inputs the ▓▓▓▓▓▓ information from the index ▓▓▓▓▓▓▓▓▓▓ that compute both an intrinsic and extrinsic ranking factor. Those intrinsic and extrinsic ranking factors are then combined into a final rank that is stored in a query cache database.

ECF No. 154-4 at 11-12 (citations omitted). LookSmart explains that it "did not prepare separate claim charts for each tier because of the substantial overlap amongst the three tiers." *Id.* at 12.

---

[2] In addition to the briefing on this motion, the Court refers to the briefing on Microsoft's pending motion for summary judgment of non-infringement, ECF Nos. 121-3, 131-4, 150-3, for the undisputed facts underlying this technology.

Instead, it referenced the different tiers and their supporting technologies, including Blue Whale and Taza, in a single claim chart. *Id.*

After obtaining discovery from Microsoft, LookSmart "decided to narrow its case and focus on News and the Superfresh tier." *Id.* at 23. It began to target its discovery requests accordingly, *id.* at 7-8, and sent Microsoft a letter that it contends laid out its News infringement theory, *id.* at 8-9; ECF No. 156-14. Microsoft disputes this characterization, noting that the letter did not include a chart showing "what Bing News functionality is alleged to satisfy each element of the claims" or even "which claims the News index allegedly infringes." ECF No. 142-4 at 6 (emphasis omitted). After this exchange, and leading up to the Rule 30(b)(6) depositions, Microsoft requested that LookSmart update its infringement contentions to lay out its News theory. ECF No. 143-2. LookSmart declined to do so. *Id.*

**B.     Analysis**

LookSmart argues that because its contentions disclosed the Superfresh tier and discussed Blue Whale and Taza, they sufficiently disclosed Bing News. Because LookSmart's theory of infringement for Bing News is the same as the theory it alleged for all of Bing, LookSmart continues, Patent Local Rules 3-1 and 3-6 did not require amendment of its contentions to reflect this newly narrowed focus. ECF No. 154-4 at 23 (describing the purpose of Rule 3-1 as forcing parties to "crystallize their *theories* of the case early in the litigation") (quoting *O2 Micro Int'l Ltd. V. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006)) (emphasis in original). LookSmart also argues that Microsoft was on notice of this shift in LookSmart's infringement focus and was not prejudiced by it. ECF No. 154-4 at 25-26.

**1.     LookSmart Did Not Explicitly Disclose Its News Theory**

LookSmart first claims that its contentions "[e]xplicitly, directly, and obviously" disclose its theory that Bing News infringes its patent. ECF No. 154-4. The Court disagrees. As a preliminary matter, there is no dispute that, as a subset of Microsoft Bing, Bing News was in some sense disclosed by the contentions as an infringing instrumentality. This broad categorical disclosure, however, does not meet the requirements of Patent Local Rule 3-1. *See Wowza*, 2014 WL 709865, at *14 ("[The Patent Local Rules] require the patentee to describe with specificity

6

where each limitation of each asserted claim is found within each accused instrumentality."); *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011) ("The Patent Local Rules require[] *specific* identification of particular accused products" and do "not tolerate broad categorical identifications . . . ." (emphasis in original)). LookSmart wisely does not spend much time arguing the contrary. Instead, LookSmart argues that its disclosure of the Fresh tier fairly encompassed Bing News.

This argument hinges on LookSmart's allegation that the contentions "particularly emphasize the Superfresh tier for News, which is code named 'Blue Whale.'" ECF No. 154-4 at 6. But this characterization both misrepresents the language of the contentions and incorrectly describes Blue Whale. While the contentions do emphasize the Superfresh tier, nowhere do they mention the portion of that tier that is specific to news-related documents. In fact, the word "news" never appears in the contentions.[3] As Microsoft points out, just ▮▮▮▮▮ of the documents in the Superfresh tier belong to the News index. ECF No. 181-4 at 4 n.1. A reference to the Superfresh tier thus cannot fairly be construed as a reference to "the Superfresh tier *for News*." ECF No. 154-4 at 6 (emphasis added).

Nor can a reference to Blue Whale. LookSmart describes Blue Whale as a "code name[]" for "the Superfresh tier for News," ECF No. 154-4 at 6, and "synonymous with the Superfresh tier that supports the News index . . . ," *id.* at 13. Microsoft, however, cites evidence showing that Blue Whale supports at least two other indices within the Fresh tier. ECF No. 181-4 at 8. So while it may be fair to call Blue Whale synonymous with the Superfresh tier, it is not synonymous with the Superfresh tier *for News*. The contentions' references to the Superfresh tier and Blue

---

[3] LookSmart points to documents cited by the contentions that "explicitly reference News." ECF No. 154-4. Many of these citations are misleading. For example, LookSmart refers to a document titled "IndexGenV2 (Kirin)" that it cited in its contentions. ECF No. 154-4 at 14. It cites page MSL_0016289 of this document, which includes a reference to "news." *Id.* However, its contentions cited pages MSL_0016273 and 84 of that document for Bing's mainline web, not News, properties. ECF No. 155-6 at 10. Likewise, LookSmart refers to a document titled "BlueWhale Design Review IndexGen." ECF No. 154-4 at 15. But where the contentions cited pages MSL_0039533 and 427 of that document for a "high-level view of the Blue Whale system," ECF No. 155-6 at 3-4, LookSmart's opposition brief cites pages MSL_0039536, 43, and 66 for specific references to News, ECF No. 154-4 at 7, 15. Rather than comb through each citation for accuracy, the Court disregards all of the cited documents.

Whale were thus insufficient to put Microsoft on notice of LookSmart's theory that the News index was the infringing instrumentality.[4]

### 2. Implicit Disclosure of the News Theory Is Not Enough

Another way to understand LookSmart's argument is that Microsoft should have *inferred* LookSmart's theory from its references to the Fresh tier and Blue Whale as well as its discovery requests' focus on News. Implicit disclosures, however, "are contrary to the purpose of the local patent rules, which require parties to 'disclose the basis for their contentions' in order to 'make them explicit and streamline patent litigation.'" *KlausTech*, 2018 WL 5109383, at *3 (quoting *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2016 WL 3230696, at *6 (N.D. Cal. June 13, 2016)). *See also Finjan*, 2018 WL 620169, at *4 (holding that references to Symantec's "Next Generation anti-malware engine" did not sufficiently disclose Symantec's Antivirus Engine because "[n]either the Court nor Symantec should be required to guess which aspects of the accused products allegedly infringe each claim element").

The Court additionally notes that LookSmart's discovery requests and letter laying out its infringement theory for News are not relevant to whether it has met its obligations under Patent Local Rule 3-1. *GeoVector Corp. v. Samsung Elecs.*, No. 16-02463-WHO, 2017 WL 76950, at *5 (N.D. Cal. Jan. 9, 2017) ("Whether Samsung's counsel actually understands GeoVector's infringement contentions, based on outside information not contained in the contentions themselves, is not relevant."). The Patent Local Rules require parties to "formally articulate [their] contentions in the proper format," *id.*, even where the opposing party knows or could easily infer the missing information, *see Oracle Am.*, 2011 WL 4479305, at *2 ("Even if it would have been easy for Google to compile an accurate list of all the devices Oracle considered to be Android devices, Rule 3-1(b) required Oracle to provide such a list in its disclosure of infringement contentions."). LookSmart failed to do so here.

---

[4] Because the Court finds LookSmart's references to the Superfresh tier and Blue Whale insufficient meet its obligations under Patent Local Rule 3-1, it need not reach the parties' dispute as to whether LookSmart's contentions referenced Blue Whale for its News or mainline web functionality. *See, e.g.*, ECF No. 154-4 at 11, ECF No. 181-4 at 8. Nor need it reach Microsoft's argument that, even if such references were sufficient under the rules, LookSmart did not chart these references for every limitation of its claims. *See* ECF No. 181-4 at 12-14.

### 3. LookSmart Seeks to Add a New Theory Rather Than Narrow an Existing One

LookSmart also argues that it did not need to amend its contentions because its News theory is merely a narrowed version of the theory it disclosed for all three tiers of Bing. It cites *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 5:12-cv-0630-LHK-PSG, 2014 WL 173409 (N.D. Cal. Jan. 9, 2014) for this proposition. ECF No. 154-4 at 24. In that case, the infringement contentions identified a particular image sensor while the expert infringement report identified a specific component of that sensor. 2014 WL 173409, at *2. The court approved this discrepancy and others as "examples of a broad contention being properly narrowed by an expert." *Id.* at *4. The Court notes first that other courts in this district have held that amendment *is* required when narrowing a contention. *See, e.g.*, *MLC Intellectual Prop.*, 2019 WL 1865921, at *4 ("If MLC wished to assert that the comparator includes the memory cell or that the comparator is the memory cell, MLC was required to explicitly disclose that theory."); *Oracle Am.*, 2011 WL 4479305, at *2 (requiring amendment of contentions identifying "mobile devices running Android" where expert report referenced three previously unidentified such devices). The Court finds this approach more consistent with the Patent Local Rules' purpose "to establish the universe of infringement theories that will be litigated in any given case." *Wowza*, 2014 WL 709865, at *14.

More importantly, however, LookSmart's infringement theory for News is not a narrowed version of the theory it disclosed for all three tiers. According to Microsoft, the Bing News index "has a unique collection of pages," relevant to Claim 1[B]; "organizes the data in a unique fashion ▮▮▮▮▮▮▮▮▮▮," relevant to Claims 1[D] and 1[G]; "uses a unique selection service ▮▮▮▮▮▮," relevant to Claim 1[D]; "uses a different static ranking calculation," relevant to Claim 1[C]; and "uses its own ▮▮▮▮▮▮ configuration files," relevant to Claim 1[D]. ECF No. 142-4 at 7-8. In attempting to show that it sufficiently disclosed these features, LookSmart points only to portions of its contentions that discussed the Superfresh tier or Blue Whale generally. *See* ECF No. 154-4 at 12-22. Aside from some misleading citations to documents cited in its contentions, *see* IV.B.1 n.3, LookSmart does not argue that its contentions laid out a theory for how the News index, rather than Superfresh or Blue Whale more broadly, infringed the claims

9

of its patent.

LookSmart either does not grasp or deliberately elides Microsoft's distinction between the Superfresh tier/Blue Whale and the News index that resides within Superfresh and is served by Blue Whale. To the degree it defends its decision not to separately chart the News index in its contentions, LookSmart refers only to the similarities among the Precision, Comprehensive, and Superfresh tiers. *See* ECF No. 154-4 at 6 ("any low-level operational differences amongst the tiers are largely irrelevant with respect to the '530 claims"). But Microsoft's argument is not that Superfresh functions differently from Precision and Comprehensive but that *News* functions uniquely *within* Superfresh. Because these differences are substantial enough to underly Microsoft's noninfringement arguments on summary judgment and LookSmart's motion to strike two of those arguments, *see* ECF Nos. 121-3, 132-1, it is not plausible to argue that LookSmart's infringement theory has not changed. This is therefore not an example of "a broad contention being properly narrowed by an expert." *Apple*, 2014 WL 173409, at *4.

Lastly, the Court notes that, even though it does not require a showing of prejudice when a party moves to strike a late-disclosed infringement theory, *see Wowza*, 2014 WL 709865, at * 15, Microsoft does make such a showing. Microsoft alleges that it "wasted countless hours locating documents, preparing witnesses, and building its defenses against infringement theories LookSmart tried to keep in play throughout fact discovery." ECF No. 142-4 at 19. LookSmart does not see "how preparing one's case for tiers that have been dropped can be prejudicial." ECF No. 154-4 at 26. But one of the purposes of the Patent Local Rules is to "streamline" patent litigation. *Thought, Inc.*, 2016 WL 3230696, at *6. Forcing a party to prepare unnecessary defenses frustrates that goal and is prejudicial.

Because LookSmart did not sufficiently disclose its theory that Bing News infringes its '530 patent, it cannot rely on that theory to allege infringement. The sole theory laid out in Dr. Pazzani's expert infringement report is the News theory. Accordingly, the Court strikes the report in full.

## CONCLUSION

For the foregoing reasons, the Court grants Microsoft's motion to strike Dr. Michael J.

Pazzani's expert report.

**IT IS SO ORDERED.**

Dated:  October 10, 2019



_____
JON S. TIGAR
United States District Judge